IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| LINDA R. COLLINSON,<br><br>                    Plaintiff,<br><br>vs.<br><br>WRG ASBESTOS PI TRUST, a Delaware Statutory Trust,<br><br>                  Defendant. | CV 23-22-M-DLC-KLD<br><br>FINDINGS & RECOMMENDATION |

This asbestos-related personal injury action comes before the Court on Defendant WRG Asbestos PI Trust's (the "Trust") motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b); or, in the alternative, to transfer venue pursuant to 11 U.S.C. § 1404(b). (Doc. 5). For the reasons stated below, the Trust's motion to dismiss for lack of subject matter jurisdiction should be granted.

**I.      Background**

The Trust is a statutory trust organized under the laws of the State of Delaware to facilitate the implementation of the First Amended Joint Plan of Reorganization (the "Plan") filed in the Chapter 11 bankruptcy proceeding for W.R. Grace & Co. ("Grace") and its affiliates. Grace is a Delaware corporation

1

that owned and operated a vermiculite mining and milling operation in Libby, Montana from approximately 1963 until 1990. (Doc. 1 at ¶ 8). As a direct result of Grace's activities in Libby, the vermiculite ore was mined, processed, released, spilled, and ultimately deposited throughout the Libby community. (Doc. 1 at ¶ 8).

On January 31, 2011, the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court") recommended that the District Court for the District of Delaware (the "Delaware District Court") confirm the Plan. *See In re W.R. Grace & Co. et al.,* 446 B.R. 96 (Bankr. D. Del. 2011); *In re W.R. Grace & Co. et al.,* Case No. 01-1139, Doc. 26155 (Bankr. D. Del. Jan 31, 2011). On January 30, 2012, the Delaware District Court entered an order confirming the Plan in its entirety (the "Confirmation Order"). (Doc. 6-1); *In re W.R. Grace & Co., et al.*, Case No. 11-199, Doc. 165 (D. Del. Jan. 30, 2012).

The Confirmation Order included an Asbestos PI Channeling Injunction (the "Channeling Injunction"), which mandated that all present and future asbestos-related personal injury claims against Grace be channeled to the Trust for resolution in accordance with the WRG Asbestos PI Trust Distribution Procedures (the "TDP"). (Doc. 6-2). The stated purpose of the TDP is "to provide fair, equitable and substantially similar treatment" for all personal injury Trust claims "that may presently exist or may arise in the future." (Doc. 6-3 at 6).

2

To accomplish this, the TDP establishes a schedule of eight asbestos-related disease levels, seven of which have presumptive medical requirements ("Medical Criteria"), as well as specific liquidated values ("Scheduled Values") and caps on their liquidated values ("Maximum Values"). (Doc. 6-3 at 7). Subject to certain exceptions not applicable here, the TDP requires the Trust to liquidate all claims under the Expedited Review Process described in Section 5.3(a) or the Individual Review Process described in Section 5.3(b). (Doc. 6-2 at 8).

The Expedited Review Process is designed to provide an efficient method for liquidating all claims that can easily be verified by the Trust as meeting the presumptive Medical Criteria for the relevant disease level. (Doc. 6-3 at 27). Expedited Review is intended to provide qualifying claimants with a fixed and certain claims payment. (Doc. 6-3 at 27). For claims that undergo Expedited Review and meet the presumptive Medical Criteria for a particular disease level, the Trust will pay the Scheduled Value set forth in Section 5.3(a)(3). (Doc. 6-3 at 27).

Claimants holding claims that cannot be liquidated by Expedited Review because they do not meet the presumptive Medical Criteria for the relevant disease level may elect the Individual Review Process set forth in Section 5.3(b). (Doc. 6-3 at 28). A claimant may elect Independent Review for purposes of determining whether the claim would be compensable in the tort system even though it does not

3

meet the presumptive Medical Criteria for any of the disease levels set forth in Section 5.3(a)(3). (6-3 at 33). In addition, or alternatively, a claimant may elect Independent Review for purposes of determining whether the liquidated value of the claim exceeds the Scheduled Value for the relevant disease level, in which case the claimant may recover up to the Maximum Value for the relevant disease level set forth in Section 5.3(b). (Doc. 6-3 at 33, 35).

The TDP's general claims liquidation procedures provide that all unresolved disputes over a claimant's medical condition, exposure history, and/or the liquidated value of a claim shall be subject to binding or non-binding arbitration, at the election of the claimant. (Doc. 6-3 at 9). Claims that are the subject of a dispute with the Trust "that cannot be resolved by non-binding arbitration may enter the tort system as provided in Sections 5.11 and 7.6" of the TDP. (Doc. 6-3 at 9).

Section 5.11 states that "[c]laimants who elect non-binding arbitration and then reject their arbitral awards retain the right to institute a lawsuit in the tort system against the [Trust] pursuant to Section 7.6." (Doc. 6-3 at 52). Section 7.6, in turn, provides in relevant part:

> If the holder of a disputed claim disagrees with the PI Trust's determination regarding the Disease Level of the claim, the claimant's exposure history or the liquidated value of the claim, and if the holder has first submitted the claim to non-binding arbitration as provided in Section 5.10 above, the holder may file a lawsuit again the PI Trust in the Claimant's Jurisdiction as defined in Section 5.3(b)(2) above. … If the claimant was alive at the time the initial pre-petition complaint was filed or on the date the proof of claim form was filed with the PI Trust, the case shall be treated as a personal

4

> injury case with all personal injury damages to be considered even if the claimant has died during the pendency of the claim. Holders of PI Trust Claims remain subject to, and bound by, the Plan, including, without limitation, the Asbestos PI Channeling Injunction … issued ... in connection with the Plan.

(Doc. 6-3 at 65-66).

Turning to the facts of this case, Plaintiff Linda Collinson has lived in Libby since 1964, and was married to and lived with Don Riley from 1968 to 1978. (Doc. 1 at ¶¶ 9, 10). For the duration of their marriage, Riley was employed by Grace at the Libby vermiculite mining and milling operation. (Doc. 1 at ¶ 10). Collinson's son was also employed by Grace at the Libby facility for three summers in the early 1970s. (Doc. 1 at ¶ 12). Collinson was repeatedly and continuously exposed to asbestos dust as a result of her husband's and son's employment, as well as her own time in the Libby community. (Doc. 1 at ¶¶ 10-13). In December of 1999, Collinson was diagnosed with asbestos-related disease. (Doc. 1 at ¶ 16).

On February 21, 2015, Collinson filed a claim with the Trust seeking compensation for Level IV-B Severe Disabling Pleural Disease, and selecting the Independent Review claim process. (Doc. 10-1, at 2, 6). The Trust rejected Collinson's claim because she did not provide evidence of blunting of the costophrenic angle, which is identified in Section 5.3(a)(3) of the TDP as one of the presumptive Medical Criteria for Level IV-B pleural disease. (Doc. 1 at ¶ 39; Doc. 6-3 at 32 n. 8). Collinson subsequently exhausted the TDP's non-binding

arbitration claim procedures (Doc. 1 at ¶ 18), and filed this tort action against the Trust on March 2, 2023 (Doc. 1).

Collinson's Complaint invokes the Court's diversity jurisdiction under 28 U.S.C. § 1332 and alleges five claims for relief: (1) negligence, (2) strict liability; (3) trespass; (4) negligent infliction of emotional distress; and (5) tort system determination. (Doc. 1 at ¶¶ 6, 19-43). In her claim for tort system determination, Collinson alleges that her claim for Level IV-B Severe Disabling Pleural Disease "is cognizable and valid in the tort system as severe disabling asbestos related pleural disease because it meets or exceeds the typical claim meeting the presumptive [Medical Criteria] for Level IV-B." (Doc. 1 at ¶ 38). Collinson claims she "meets all but one of the 'presumptive' medical criteria, all presumptive criteria that correspond to typical manifestation of severe disease from the Libby amphibole, and has severely disabling disease recognized by adjudications and verdicts in Montana for similar disease manifestation." (Doc. 1 at ¶ 39). Collinson asserts that she filed her claim "with the election that it be reviewed through the Individual Review Process for purposes of determining whether the claim would be cognizable and valid in the tort system even though it does not meet all of the presumptive Medical Criteria for Level IV-B" pleural disease. (Doc. 1 at ¶ 39). Collinson requests a jury trial, and seeks entry of judgment against the Trust based on Individual Review of her Level IV-B claim, including consideration of the

jury's evaluation of her asbestos injury and its valuation of her alleged damages. (Doc. 1 at ¶ 43).

The Trust moves to dismiss the Complaint for failure to state a claim under Rule 12(b)(6) on the grounds that Collinson is seeking relief that is contrary to the plain language of the TDP and, taking the allegations in the Complaint as true, she cannot satisfy the medical criteria established by the Delaware District Court's Confirmation Order for Level IV-B Severe Disabling Pleural Disease. The Trust also moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction because Collinson's claims would require the Court to override or interpret provisions of the TDP, and thus fall within the exclusive jurisdiction of the Delaware Bankruptcy Court. Alternatively, the Trust moves to transfer venue to the Delaware District Court pursuant to 11 U.S.C. § 1404(b) for the convenience of the parties and the witnesses, and in the interest of justice. (Doc. 5).

Although the Trust presents its Rule 12(b)(6) arguments first, the Court must determine whether it has subject matter jurisdiction before addressing whether Collinson's Complaint states a claim for relief. *See Bell v. Hood*, 327 U.S. 678, 682 (1946) ("Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy."); *Taylor v. Wolf*, 2020 WL 5893845, at *1 (D. Mont. Oct. 5, 2020) (explaining it was

incumbent upon the court to ascertain whether subject matter existed before addressing the defendants' Rule 12(b)(6) motion to dismiss).

## II. Rule 12(b)(1) Legal Standard

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction over the claims asserted. "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." *Rattlesnake Coalition v. United States Environmental Protection Agency*, 509 F.3d 1095, 1102 n. 1 (9th Cir. 2007).

A defendant may pursue a Rule 12(b)(1) motion to dismiss either as a facial challenge to the allegations of a pleading, or as a substantive challenge to the facts underlying the allegations. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). A facial challenge to the jurisdictional allegations is one which contends that the allegations "are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039.

The success of a facial challenge to jurisdiction, like the one the Trust raises here, depends on the allegations in the complaint and does not involve the resolution of a factual dispute. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir.

2004). When considering such a facial challenge, the court takes the factual allegations in the complaint as true and construes them in the in the light most favorable to the plaintiff. *Wolfe*, 392 F.3d at 362. In addition, the court may consider materials that are subject to judicial notice, and documents that are incorporated by reference into the complaint. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). An extrinsic document is incorporated by reference into the complaint "if the document's authenticity is not contested and the plaintiff's complaint necessarily relies on it." *Johnson v. Fed. Home Loan Mortgage Corp.*, 793 F.3d 1005, 1007 (9th Cir. 2015).

**III.   Discussion**

Bankruptcy courts have original, but not exclusive, jurisdiction over all civil proceedings "arising under" or "related to" cases under Title 11 of the United States Code, otherwise known as the Bankruptcy Code. 28 U.S.C. § 1334; *see In re Pegasus Gold Corporation,* 394 F.3d 1189, 1193 (9th Cir. 2005)."Proceedings 'arising in' bankruptcy cases are generally referred to as 'core' proceedings, and essentially are proceedings that would not exist outside of a bankruptcy[.]" *In re Pegasus*, 394 F.3d at 1193. Bankruptcy courts also have jurisdiction over proceedings that are "related to" a bankruptcy case. *In re Pegasus Gold*, 394 F.3d at 1193.

In defining the term "related to," the Ninth Circuit has "differentiated between cases that are pending before a plan has been confirmed and bankruptcy cases where the plan has been confirmed and the debtor discharged from bankruptcy." *County of San Mateo v. Chevron Corp.*, 32 F.4th 733, 760 (9th Cir. 2022). In the pre-confirmation context, "related to" is defined broadly to include all proceedings in which the outcome "could conceivably have any effect on the estate being administered in bankruptcy." *County of San Mateo*, 32 F.4th at 760-61. But the term "related to" has a more limited meaning" where, as here, a plan has been confirmed. *County of San Mateo*, 32 F.4th at 761. "A proceeding that arises after a plan has been confirmed is 'related to' a bankruptcy case only if there is a 'close nexus to the bankruptcy plan or proceeding.'" *County of San Mateo*, 32 F.4th at 761. The Ninth Circuit has indicated that "matters affecting the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus to a bankruptcy case." *County of San Mateo*, 32 F.4th at 761 (internal quotation marks removed).

The Ninth Circuit takes "a holistic approach to determining whether a proceeding that arises after a plan has been confirmed has a close nexus to that plan." *County of San Mateo*, 32 F.4th at 761. "[T]he close nexus test 'requires particularized consideration of the facts and posture of each case,' and 'can only be properly applied by looking at the whole picture.'" *County of San Mateo*, 32 F.4th

at 761 (quoting *In re Wilshire Courtyard*, 729 F.3d 1279, 1289 (9th Cir. 2013)). As a general rule, "where the district court's review of a plan involves merely the application of the plan's plain or undisputed language, and does not require any resolution of disputes over the meaning of the plan's terms, the review does not depend upon a resolution of a substantial question of bankruptcy law" and would therefore "lack the close nexus with the bankruptcy case necessary for 'related to' jurisdiction." *County of San Mateo*, 32 F.4th at 762 (internal quotation marks removed).

The Trust argues this Court lacks subject matter jurisdiction for two reasons. First, the Trust contends that to the extent Collinson is challenging the rulings of the Delaware District Court, this Court lacks subject matter jurisdiction to consider a collateral attack on the Confirmation Order. (Doc. 6 at 18-19). According to the Trust, the TDP is clear; blunting of the costophrenic angle is an essential element of any claim for Level IV-B pleural disease, including claims subject to Individual Review and later asserted in a tort system action pursuant to Section 7.6. Because she admittedly cannot demonstrate blunting of the costophrenic angle (Doc 1 at ¶ 39), the Trust contends Collinson is effectively asking the Court to override an express provision of the TDP, and in doing so is mounting a collateral attack on the Delaware District Court's Confirmation Order. The Trust asserts that this Court does not have jurisdiction to consider such a collateral attack on the Confirmation

Order, and cannot override the plain language of the Level IV-B Medical Criteria set forth in the TDP. *See Powell v. U.S. Gov't,* 23 Fed. App'x 674 (9th Cir. 2001) ("[T]he district court lacked jurisdiction to review a final decision of another United States District Court."); *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995) ("Once a bankruptcy plan is confirmed, it is binding on all parties and all questions that could have been raised pertaining to the plan are entitled to res judicata effect…").

    Collinson counters that she is not seeking to collaterally attack the Confirmation Order or asking the Court to override the terms of the TDP. Collinson asserts that Section 7.6 of the TDP provides this Court with jurisdiction because she has undisputedly exhausted the TDP's non-binding arbitration claim procedures, and her tort claims permissibly challenge the Trust's "determination regarding the Disease Level of [her] claim" and "the liquidated value of the claim" as expressly authorized by the TDP. (Doc. 6-3 at 65). Apart from what she describes as the unambiguous language of Section 7.6, Collinson argues her tort claims do not invoke or require interpretation of the TDP. Collinson notes that a lawsuit under Section 7.6 "shall be treated as a personal injury case with all personal injury damages to be considered…" (Doc. 6-3 at 66), and contends the essential distinctive of a tort system claim resolution under Section 7.6 is that it resolves disease level disputes solely on the "personal injury" judgment of

compensability of the claim. (Doc. 10 at 19). Collinson submits that the Medical Criteria of Section 5.3(a) apply only to Expedited Review, and are not relevant to Individual Review under Section 5.3(b) or a tort system lawsuit under Section 7.6 of the TDP. Because she did not elect Expedited Review, Collinson argues the TDP permits her to establish the tort system equivalent of a Level IV-B claim of Severe Disabling Pleural Disease without having to demonstrate that she satisfies the Level IV-B Medical Criteria, including blunting of the costophrenic angle.

Collinson's reading of the TDP provides a segue to the Trust's second argument against subject matter jurisdiction. The Trust asserts that Collinson's claims will require the Court to interpret the TDP, which means this lawsuit has a close nexus to the Grace bankruptcy case. And because the Delaware Bankruptcy Court expressly retained exclusive jurisdiction over matters related to the administration and interpretation of the Plan, this Court lacks subject matter jurisdiction. The Court agrees.

The Plan includes a retention of jurisdiction provision that states in relevant part:

**Article 10 RETENTION OF JURISDICTION**

Pursuant to Bankruptcy Code §§ 105(a), 524(a), 1141(d), and 1142, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter … that relates to the following, provided that the District Court shall retain jurisdiction for such matters to which the automatic reference to the Bankruptcy Court has been withdrawn or to the extent required by law and to the extent set forth in Section 10.1 below:

13

## 10.1 PLAN DOCUMENTS

>To interpret, enforce, and administer the terms of the Plan Documents and all annexes and exhibits thereto.

(Doc. 6-4 at 2). The Trust argues that the TDP requires evidence of costophrenic blunting to establish Level IV-B severe pleural disease even in a tort system lawsuit under Section 7.6. Section 5.3(a) of the TDP describes the Expedited Review Process, and subsection (3) sets forth the Medical Criteria for Level IV-B Severe Disabling Pleural Disease. (Doc. 6-3 at 32). The first Medical Criteria for a Level IV-B claim requires:

>(1) Diagnosis of diffuse pleural thickening of at least extent "2" and at least width "a" as one component of a bilateral non-malignant asbestos related disease based on definitions as set forth in the 2000 revision of the ILO classification,[8] …

(Doc. 6-3 at 32). Footnote eight states:

>The definitions of diffuse pleural thickening, extent, and width must come from the 2000 ILO Classification for Pneumoconiosis. The 2000 ILO classification restricts diffuse pleural thickening to cases where there is associated blunting of the costophrenic angle; this is a change from the prior version of the ILO classification. Use of this category must require adherence to the 2000 classification.

(Doc. 6-3 at 32). Although this footnote appears in the section applicable to Expedited Review, the Trust argues blunting of the costophrenic angle is an essential element of any Level IV-B claim, including claims subject to Individual Review and later asserted in a tort system action pursuant to Section 7.6.

14

As the parties' competing arguments demonstrate, Collinson's claims raise a dispute concerning interpretation of the TDP. Broadly speaking, Collinson's claims would require the Court to interpret the TDP to determine whether the Medical Criteria identified in Section 5.3(a) apply in a personal injury action following Individual Review under Section 5.3(b). And more specifically here, Collinson's claims raise the issue of whether a plaintiff in a tort system action authorized under Section 7.6 of the TDP must demonstrate that she meets the Level IV-B Medical Criteria, including particularly blunting of the costophrenic angle, to recover tort damages for Level IV-B Severe Disabling Pleural Disease.

Because Collinson's claims cannot be resolved without interpreting the terms of the TDP, the Court concludes there is a close nexus between this proceeding and the bankruptcy case, such that the Delaware Bankruptcy Court has "related to" jurisdiction. Given that the Bankruptcy Court expressly retained exclusive jurisdiction over such actions, Collinson's Complaint should be dismissed for lack of subject matter jurisdiction. Having so concluded, the Court need not address the Trust's Rule 12(b)(6) motion to dismiss for failure to state a claim or its alternative motion to transfer venue pursuant to 11 U.S.C. § 1404(b).

**IV.   Conclusion**

For the reasons explained above,

IT IS RECOMMENDED that the Trust's Rule 12(b) Motion to Dismiss (Doc. 5) for lack of subject matter jurisdiction be GRANTED.[1]

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 24th day of January, 2024.

_____
Kathleen L. DeSoto
United States Magistrate Judge

---

[1] Because the Trust's motion to dismiss can be resolved based on the briefs and other materials of record, Collinson's motion for oral argument (Doc. 18) is DENIED.