IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| LINDA R. COLLINSON, | CV 23–22–M–DLC |
| Plaintiff, | |
| vs. | ORDER |
| WRG ASBESTOS PI TRUST, | |
| Defendant. | |

United States Magistrate Judge Kathleen L. DeSoto issued her Findings and Recommendation in this case on January 24, 2024, recommending that the Court grant Defendant WRG Asbestos PI Trust's (the "PI Trust") Motion to Dismiss (Doc. 5) and dismiss this matter for lack of subject matter jurisdiction.  (Doc. 19 at 16.)  Plaintiff timely filed an objection to Judge DeSoto's Findings and Recommendation.  (Doc. 20.)  The Court held a hearing on April 11, 2024, wherein the parties addressed the issues raised in the Findings and Recommendation and objection.  For the reasons discussed below, the Court declines to adopt the Findings and Recommendation and denies the PI Trust's Motion to Dismiss.

1

## FACTUAL BACKGROUND

### 1.  The WRG Asbestos PI Trust Distribution Procedures

The PI Trust is a statutory trust organized under the laws of the state of Delaware to facilitate the implementation of the First Amended Joint Plan of Reorganization (the "Plan") filed in the Chapter 11 bankruptcy proceeding for W.R. Grace & Co. ("Grace" or "WRG") and its affiliates.  (Doc. 1 ¶¶ 2–4.)  The Plan was confirmed in its entirety on January 30, 2012, via the Delaware District Court's Confirmation Order.  (Doc. 6-1.)

The Confirmation Order included an Asbestos PI Channeling Injunction, which mandates that all present and future asbestos related personal injury claims against Grace be channeled to the PI Trust for resolution in accordance with the WRG Asbestos PI Trust Distribution Procedures (the "TDP").  (Doc. 6-2.)  The purpose of the TDP is "to provide fair, equitable and substantially similar treatment" for all personal injury PI Trust claims.  (Doc. 6-3 at 6.)  The TDP sets forth "procedures for processing and paying Grace's several share of the unpaid portion of asbestos personal injury claims."  (*Id.* at 7.)  The TDP includes "a schedule of eight asbestos-related diseases ('Disease Levels'), seven of which have presumptive medical exposure requirements ('Medical/Exposure Criteria') and specific liquidated values ('Scheduled Values'), and seven of which have anticipated average values ('Average Values') and caps on their liquidated valued

2

('Maximum Values')."  (*Id.*)  Subject to certain exceptions not applicable here, a claimant may elect to proceed under the Expedited Review Process, Section 5.3(a), or the Individual Review Process, Section 5.3(b).  (*Id.* at 8.)

The Expedited Review Process "is designed primarily to provide an expeditious, efficient and inexpensive method for liquidating all PI Trust Claims . . . , where the claim can easily be verified by the PI Trust as meeting the presumptive Medical/Exposure Criteria for the relevant Disease Level."  (*Id.* at 27.)  Disease Levels, Schedule Values, and Medical/Exposure Criteria are set forth in Section 5.3(a)(3).  (*Id.* at 29.)  Relevant here, "Severe Disabling Pleural Disease" is listed as "Level IV-B" with a Scheduled Value of $50,000.  (*Id.* at 32.)  The Medical/Exposure Criteria for Level IV-B Severe Disabling Pleural Disease is listed as:

> (1) Diagnosis of diffuse pleural thickening of at least extent "2" and at least width "a" as one component of a bilateral non-malignant asbestos related disease based on definitions as set forth in the 2000 revision of the ILO classification[8], plus (a) TLC less than 65%, or (b) FVC less than 65% and FEVI/FVC ratio greater than 65%, (2) six months Grace Exposure, (3) for claimants whose Grace Exposure is not described in clause (ii) of the definition of Grace Exposure, Significant Occupational Exposure to asbestos and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the pulmonary disease in question.

(*Id.*)  Footnote eight states:

> The definitions of *diffuse pleural thickening, extent* and *width* must come from the 2000 ILO Classification for Pneumoconiosis. The 2000 ILO classification restricts diffuse pleural thickening to cases where

there is associated blunting of the costophrenic angle; this is a change from the prior versions of the ILO classification. Use of this category must require adherence to the 2000 classification: International Labour Office (ILO). *Guidelines for the Use of the ILO International Classification of Radiographs of Pneumoconioses, Revised Edition 2000* (Occupational Safety and Health Series, No. 22). International Labour Office: Geneva, 2002.

(*Id.*)

Under the Individual Review Process, "a claimant may elect to have his or her PI Trust Claim reviewed for purposes of determining whether the claim would be compensable in the tort system even though it does not meet the presumptive Medical/Exposure Criteria for any of the Disease Levels set forth in Section 5.3(a)(3)." (*Id.* at 33.)  The TDP's Claims Liquidation Procedures, Section 2.2, make clear that, under the Individual Review Process, "the PI Trust can offer the claimant an amount up to the Scheduled Value of that Disease Level if the PI Trust is satisfied that the claimant has presented a claim that would be cognizable and valid in the tort system," even though "the claim does not meet the presumptive Medical/Exposure Criteria for the relevant Disease Level" set forth in Section 5.3(a)(3).  (*Id.* at 8.)

The TDP also provides that "all unresolved disputes over a claimant's medical condition, exposure history and/or the liquidation value of the claim shall be subject to binding or non-binding arbitration," at the election of the claimant. (*Id.* at 9.)  PI Trust Claims "that cannot be resolved by non-binding arbitration may

4

enter the tort system as provided in Sections 5.11 and 7.6." (*Id.*)  Pursuant to

Section 5.11, "[c]laimants who elect non-binding arbitration and then reject their

arbitration awards retain the right to institute a lawsuit in the tort system against

the PI Trust pursuant to section 7.6" but any monetary damages award will be

limited as specified in Section 7.7.  (*Id.* at 52.)  Section 7.6 provides:

> If the holder of a disputed claim disagrees with the PI Trust's
> determination regarding the Disease Level of the claim, the claimant's
> exposure history or the liquidated value of the claim, and if the holder
> has first submitted the claim to non-binding arbitration as provided in
> Section 5.10 above, the holder may file a lawsuit against the PI Trust in
> the Claimant's Jurisdiction . . . .  If the claimant was alive at the time
> the initial pre-petition complaint was filed or on the date the proof of
> claim form was filed with the PI Trust, the case shall be treated as a
> personal injury case with all personal injury damages to be considered
> even if the claimant has died during the pendency of the claim.  Holders
> of PI Trust Claims remain subject to, and bound by, the Plan, including,
> without limitation, the Asbestos PI Channeling Injunction . . . .

(*Id.* at 65–66.)  Section 7.7 governs payment of judgments for money damages and

limits the amount recoverable from any "non-Extraordinary claims involving

Disease Levels II–VIII" to "the Maximum Values for such Disease Levels set forth

in Section 5.3(b)(3)."  (*Id.* at 67.)

The Plan contains a retention of jurisdiction provision that states, in

relevant part:

## ARTICLE 10
## RETENTION OF JURISDICTION

Pursuant to Bankruptcy Code §§ 105(a), 524(a), 1141(d), and 1142, the
Bankruptcy Court shall retain and shall have exclusive jurisdiction over

any matter (i) arising under the Bankruptcy Code, (ii) arising in or related to the Chapter 11 Cases or this Plan, or (iii) that relates to the following, provided that the District Court shall retain jurisdiction for such matters to which the automatic reference to the Bankruptcy Court has been withdrawn or to the extent required by law and to the extent set forth in Section 10.10 below:

### 10.1 PLAN DOCUMENTS

To interpret, enforce, and administer the terms of the Plan Documents and all annexes and exhibits thereto.

(Doc. 6-4 at 2.)

## 2. Plaintiff's PI Trust Claim

On February 21, 2015, Plaintiff Linda R. Collinson filed a claim with the PI Trust seeking compensation for Level IV-B Severe Disabling Pleural Disease. (Doc. 10-1 at 6.)  Plaintiff elected to proceed under the Individual Review Process. (*Id.* at 2.)  The trust rejected Plaintiff's claim because she did not provide evidence of blunting of the costophrenic angle.  (Doc. 1 ¶ 39.)  Plaintiff then elected to proceed to non-binding arbitration and exhausted the TDP's arbitration claim procedures.  (*Id.* ¶ 18.)  Plaintiff rejected the outcome of the non-binding arbitration and has elected to bring the instant tort action against the PI Trust pursuant to the terms of the TDP.

### PROCEDURAL BACKGROUND

Plaintiff's Complaint invokes the Court's diversity jurisdiction under 28 U.S.C. § 1332.  (*Id.* ¶ 6.)  Plaintiff alleges five claims for relief: (1) negligence, (2)

6

strict liability, (3) trespass, (4) negligent infliction of emotional distress, and (5) tort system determination.  (*Id.* ¶¶ 19–43.)  Plaintiff alleges that her claim for Level IV-B Severe Disabling Pleural Disease "is cognizable and valid in the tort system as severe disabling asbestos related pleural disease because it meets or exceeds the typical claim meeting the presumptive [Medical Criteria] for Level IV-B."  (*Id.* ¶ 38.)  However, Plaintiff acknowledges that she does not meet one of the presumptive Medical Criteria for Level IV-B, specifically blunting of the costophrenic angle.  (*Id.* ¶ 39.)

Plaintiff requests a jury trial and seeks entry of judgment against the PI Trust finding "that Plaintiff has demonstrated a claim that is cognizable and valid in the tort system as a Level IV-B (Severe Disabling Pleural Disease) claim, so as to otherwise satisfy the Medical Criteria for such level" and "that Plaintiff has an exposure history of more than 95% exposure to Grace asbestos."  (*Id.* at 8–9.) Plaintiff also seeks an award of compensatory damages.  (*Id.* at 9.)

The PI Trust filed a Motion to Dismiss or, in the Alternative, Motion to Transfer Venue raising two potential grounds for dismissal: (1) failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6); and (2) lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1).  (Doc. 5 at 1.)  Alternatively, the PI Trust moves to transfer venue to the Delaware District Court pursuant to 28 U.S.C. § 1404(a).  (*Id.*)

7

Judge DeSoto addressed the PI Trust's Motion to Dismiss in her Findings and Recommendation to this Court.  (Doc. 19.)  Judge DeSoto determined that the Court lacks subject matter jurisdiction because the Delaware Bankruptcy Court expressly retained exclusive jurisdiction over matters related to the administration and interpretation of the Plan and there is a close nexus between this proceeding and the bankruptcy case such that the Delaware Bankruptcy Court has "related to" jurisdiction.  (*Id.* at 13, 16.)  Judge DeSoto explained that resolution of Plaintiff's personal injury action necessarily requires the Court to determine "whether the Medical Criteria identified in Section 5.3(a) apply in a personal injury action following Individual Review under Section 5.3(b)," as argued by the PI Trust.  (*Id.* at 15.)  Or, more specifically, "whether a plaintiff in a tort system action authorized under Section 7.6 of the TDP must demonstrate that she meets the Level IV-B Medical Criteria, including particularly blunting of the costophrenic angle, to recover tort damages for Level IV-B Severe Disabling Pleural Disease."  (*Id.*)  Because Judge DeSoto found that the Court lacks subject matter jurisdiction, she did not address the PI Trust's argument under Rule 12(b)(6) or the alternative motion to transfer venue.  (*Id.*)

Plaintiff timely filed an objection to the Findings and Recommendation. (Doc. 20.)  Plaintiff specifically objects to Judge DeSoto's finding that the Court lacks subject matter jurisdiction.  (*Id.* at 3.)  Plaintiff is entitled to *de novo* review

of those findings and recommendations to which she has specifically objected.  28

U.S.C. § 636(b)(1)(C); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th

Cir. 2003).  Absent objection, the Court reviews findings and recommendations for

clear error.  *McDonnell Douglas Corp. v. Commodore Bus. Machs., Inc.*, 656 F.2d

1309, 1313 (9th Cir. 1981).  Clear error exists if the Court is left with a "definite

and firm conviction that a mistake has been committed."  *United States v. Syrax*,

235 F.3d 422, 427 (9th Cir. 2000).  As such, the Court reviews Judge DeSoto's

finding that this Court lacks subject matter jurisdiction and recommendation to

dismiss *de novo*.  Because the Court declines to adopt Judge DeSoto's Findings

and Recommendation, the Court addresses the PI Trust's arguments for dismissal

under Rule 12(b)(6) and transfer of venue.

## DISCUSSION

### I. Subject Matter Jurisdiction

Rule 12(b)(1) governs a motion to dismiss for lack of subject matter

jurisdiction.  "In considering jurisdiction questions, it should be remembered that it

is a fundamental principle that federal courts are courts of limited jurisdiction.'"

*Stock W., Inc. v. Confederated Tribes of Colville Rsrv.*, 873 F.2d 1221, 1225 (9th

Cir. 1989) (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374

(1978)).  "In reviewing a [Rule 12(b)(1)] motion to dismiss for lack of jurisdiction,

the [C]ourt takes the allegations in the plaintiff's complaint as true."  *Wolfe v.*

9

*Strankman*, 392 F.3d 358, 360 (9th Cir. 2004).  "When subject matter jurisdiction

is challenged under [Rule] 12(b)(1), the plaintiff has the burden of proving

jurisdiction in order to survive the motion."  *Kingman Reef Atoll Invs., L.L.C. v.*

*United States*, 541 F.3d 1189, 1197 (9th Cir. 2008).

To begin, there is no dispute that Section 7.6 of the TDP allows a claimant to

bring a personal injury action against the PI Trust where the claimant: (1) has

proceeded through the Individual Review Process, (2) the claimant disagrees with

the PI Trust's determination regarding the Disease Level of the claim, the

claimant's exposure history, or the liquidated value of the claim; and (3) the

claimant has first submitted the disputed claim to non-binding arbitration.  Plaintiff

has met all three of these requirements and Plaintiff's Complaint properly invokes

the Court's diversity jurisdiction under 28 U.S.C. § 1332.  Accordingly, it would

appear that this Court has subject matter jurisdiction over Plaintiff's Complaint.

The PI Trust contends, however, that this this Court lacks subject matter

jurisdiction for two reasons.  First, the Court "has no appellate jurisdiction to

override the plain language of the Level IV-B Medical Criteria set forth in the

TDP."  (Doc. 6 at 19.)  Second, interpretation of the TDP and resolution of matters

"arising under" and "related to" the Plan must be resolved in the Delaware

Bankruptcy Court.  (*Id.* at 19–21.)  Both arguments are premised on the PI Trust's

contention that, under the TDP, Plaintiff cannot successfully bring a tort claim

against the PI Trust for Level IV-B Severe Disabling Pleural Disease without

demonstrating blunting of the costophrenic angle, which Plaintiff admits she

cannot do.  (*Id.* at 14.)

Plaintiff responds that this matter is not a collateral attack on the

Confirmation Order and that her claims do not require interpretation of the TDP.

(Doc. 10 at 11–16.)   Rather, it is Plaintiff's position that this action "invokes the

unequivocal terms of TDP § 7.6" by "seek[ing] a 'tort system' resolution of the

nature and degree of the asbestos disease Plaintiff sustained from exposure to

Grace asbestos."  (Doc. 20 at 4, 5).  The Court agrees that the Complaint is not a

collateral attack on the terms of the TDP, there is not an issue of interpretation, and

there is not a dispute over the TDP's terms that must first be resolved in the

Delaware Bankruptcy Court before this matter can proceed in this Court.

Plaintiff's Complaint simply requires the Court to apply the plain language of the

TDP and, therefore, the Court has subject matter jurisdiction over this dispute.

In bringing a tort action against the PI Trust, Plaintiff remains bound by the

terms of the Plan, including the Asbestos PI Channeling Injunction and the TDP.

However, those terms do not require proof of blunting of the costophrenic angle in

order to establish Level IV-B Severe Disabling Pleural Disease under Individual

Review or in a tort action brought pursuant to Section 7.6.  As discussed above, the

TDP allows a claimant to proceed under one of two systems of review: Expedited

11

Review under Section 5.3(a) or Individual Review under Section 5.3(b).

Expedited Review allows a claimant to reach an expeditious resolution of a claim

by meeting presumptive Medical/Exposure Criteria for the relevant Disease Level.

Under Expedited Review, a claimant must demonstrate blunting of the

costophrenic angle in order to meet all of the presumptive Medical/Exposure

Criteria for Level IV-B Severe Disabling Pleural Disease.  However, as explicitly

stated in Section 2.2 of the TDP, "[c]laims involving Disease Levels I–V, VII and

VIII *that do not meet the presumptive Medical/Exposure Criteria for the relevant*

*Disease Level* may undergo the PI Trust's Individual Review Process."  (Doc. 6-3

at 8.)  This principle is reiterated in Section 5.3(b), which states that, under the

Individual Review Process, "a claimant may elect to have his or her PI Trust Claim

reviewed for purposes of determining whether the claim would be compensable in

the tort system *even though it does not meet the presumptive Medical/Exposure*

*Criteria for any of the Disease Levels set forth in Section 5.3(a)(3) above*."  (*Id.* at

33.)  Section 5.3(b)(1)(A) again states that "[t]he PI Trust's Individual Review

Process provides a claimant with an opportunity for individual consideration and

evaluation of a PI Trust Claim *that fails to meet the presumptive Medical/Exposure*

*Criteria for Disease Levels I–V, VII, or VIII*."  (*Id.* at 35.)

These provision make it clear that the presumptive Medical/Exposure

Criteria set forth in Section 5.3(a)(3) under the Expedited Review Process—

12

including blunting of the costophrenic angle—are not required to establish a specific Disease Level under the Individual Review Process or in the tort system. In other words, contrary to the PI Trust's argument, blunting of the costophrenic angle is not an "essential element" of a claim for Level IV-B Severe Disabling Pleural Disease in a tort action brought pursuant to Section 7.6. Pursuant to Section 7.7, however, a claimant's recovery is limited to the Maximum Value for a Scheduled Disease as listed in Section 5.3(b)(3). For example, Plaintiff's recovery in this action would be limited to $100,000. (Doc. 6-3 at 37.) Thus, a claimant that chooses to proceed in the tort system still must establish that they meet a specific Disease Level, but a claimant may offer evidence other than the presumptive Medical/Exposure Criteria, such as expert opinion and medical diagnoses, to establish their claim for a particular Disease Level.

This plain-language reading of the TDP is further supported by the Delaware District Court's decision confirming the Plan. *See In re W.R. Grace & Co.*, 475 B.R. 34 (D. Del. 2012). In that decision, the Delaware District Court specifically addressed concerns raised by claimants from Libby, Montana, regarding the TDP's criteria for Level IV-B Severe Disabling Pleural Disease. *Id.* at 122. The Libby claimants expressed concern about their inability to meet the criteria under Expedited Review. *Id.* The Delaware District Court determined that the TDP's

terms were not discriminatory because of "the Individual Review safeguard." *Id.*

at 123.  The court went on to state the following:

> Under the Individual Review process, a personal injury claimant may
> still be able to recover up to the Maximum Value of his claim, *even if*
> *he otherwise failed to meet the criteria to qualify for a specific Disease*
> *Level under Expedited Review. Individual Review was established to*
> *safeguard claims that are viable, but that may have otherwise slipped*
> *between the cracks of the eight Expedited Review categories.* The
> Individual Review process allows claimants that are displeased with
> their recovery or categorization under Expedited Review to present
> their claims and any supporting evidence to a panel of trustees
> representing the asbestos trust. The panel may award such claimants
> liquidated settlements if it finds they are entitled to greater recovery or
> a higher categorization than they were given in Expedited Review.

*Id.* at 123–24 (emphasis added).  The court then went on to address the Libby

claimant's concerns regarding their right to trial by jury.  *Id.* at 167.  In that

discussion, the court again reiterated the process available to claimants under the

TDP:

> As described above, the Joint Plan provides two forms of claims
> processing: Expedited Review and Individual Review. If a claimant is
> dissatisfied with the outcome of these two procedures, he can seek
> further review through mediation and nonbinding arbitration. If the
> claimant is still dissatisfied after exhausting these options, he can then
> elect to have his claims liquidated in the tort system by jury trial.
> However, if a claimant elects to proceed to jury trial, his potential
> recovery under the Joint Plan is limited to the lesser of the amount of
> the jury verdict or the Maximum Value established by the TDP.

*Id.* at 167.  The court concluded that this scheme adequately protects a claimant's

right to a jury trial under the Seventh Amendment and 28 U.S.C. § 1411(a).  *Id.* at

173.

To adopt the PI Trust's argument would require the Court to read requirements into the TDP that are plainly absent and would undermine the right of a claimant to challenge the PI Trust's Disease Level determination via the tort system. This analysis, in and of itself, does not constitute an "interpretation" of the TDP because the Court is simply applying the plain language of the TDP to the facts of this case. *Cf. Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 761 (9th Cir. 2022) (drawing a distinction between cases that involve "interpretation, implementation, consummation, execution, or administration" of a bankruptcy plan versus mere application of a plan's plain language.) Furthermore, to the extent there was ever any dispute as to these terms and their operation, it would appear that the dispute was already resolved by the Delaware District Court when confirming the Plan. If the PI Trust wishes to challenge the language of the TDP, the PI Trust may elect to do so in the Delaware Bankruptcy Court in a separate proceeding. However, the Court will not allow the PI Trust to collaterally attack the Plan through this action when Plaintiff does not seek to dispute or modify the terms of the TDP.

Accordingly, the Court concludes that it has subject matter jurisdiction over Plaintiff's claim, declines to adopt Judge DeSoto's Findings and Recommendation, and denies the PI Trust's Motion to Dismiss under Rule 12(b)(1).

## II. Failure to State a Claim

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal is appropriate "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (internal quotation marks omitted). "In general, the [Rule 12(b)(6)] inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff"; however, the Court "need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (internal citation omitted).

The PI Trust's argument regarding dismissal under Rule 12(b)(6) is premised on the same argument addressed above: in order to succeed in a tort claim for Level IV-B Severe Disabling Pleural Disease against the PI Trust, Plaintiff must demonstrate blunting of the costophrenic angle. (Doc. 6 at 9.) The

PI Trust then argues that, because Plaintiff admittedly cannot demonstrate blunting of the costophrenic angle, she cannot state a claim for which relief may be granted. (*Id.* at 10.)  However, as discussed above, the PI Trust's argument is inconsistent with the plain language of the TDP because Plaintiff does not have to demonstrate blunting of the costophrenic angle to prove her claim.  Therefore, the PI Trust's motion under Rule 12(b)(6) must also fail.

### III.    Transfer of Venue

Change of venue is governed by 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  A court considering whether to transfer venue under § 1404(a) must first determine whether the action might have been brought in the requested venue.  *See, e.g.*, *Meidinger v. StarStone Specialty Ins. Co.*, CV 22-45-GF-BMM, 2022 WL 11805652, at *1 (D. Mont. Oct. 20, 2022); *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985).  If the case might have been brought in the requested venue, the court must then "evaluate both the convenience of the parties and various public-interest considerations."  *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 62 (2013).

The PI Trust argues that this case could have been brought in the District of Delaware and the relevant factors support a transfer of venue.  (Doc. 6 at 24–25.)

17

However, the PI Trust ignores that, under the plain language of Section 7.6, tort action against the PI Trust must be filed in the "Claimant's Jurisdiction."  The Claimant's Jurisdiction is defined in Section 5.3(b)(2) as either "(i) the jurisdiction in which the claimant resides at the time of diagnosis or when the claim is filed with the PI Trust; or (ii) a jurisdiction in which the claimant experienced exposure to asbestos or an asbestos-containing product or to conduct for which Grace has legal responsibility."  (Doc. 6-3 at 36.)  Plaintiff is, and was at all relevant times, a resident of Montana and all exposure history occurred in Montana.  (Doc. 1 at 1–4.)  Moreover, it is undisputed that Plaintiff never resided in Delaware and none of the alleged exposure to Grace asbestos occurred in Delaware.  (*See* Doc. 10 at 17.)  Pursuant to the terms of the TDP, which are binding on both parties, Montana is the only appropriate venue for this action.  Therefore, the Court finds that transfer of venue is not appropriate.

## CONCLUSION

Accordingly, IT IS ORDERED that the Court DECLINES TO ADOPT Judge DeSoto's Findings and Recommendation (Doc. 19).

IT IS FURTHER ORDERED that the PI Trust's Motion to Dismiss or, in the Alternative, Motion to Transfer Venue (Doc. 5) is DENIED.

IT IS FURTHER ORDERED that the PI Trust must file an answer to the Complaint within fourteen days of the date of this Order pursuant to Federal Rule

of Civil Procedure 12(a)(4)(A).

IT IS FURTHER ORDERED that the Court's previous Preliminary Pretrial Conference Order (Doc. 3) is VACATED.  The Court will reset these deadlines by separate order following the filing of the PI Trust's answer.

DATED this 6th day of May, 2024.

Dana L. Christensen, District Judge
United States District Court

19